In re John W. CARTER and Vinnese Carter.

In re Dale Leon MARTIN.

Bankruptcy Nos. 87–40521–PKE, 88–50069–PKE.

United States Bankruptcy Court, D. South Dakota.

June 8, 1989.

Kay Cee Hodson, Sioux Falls, S.D., for U.S. trustee.

David O. Carter, Carlsen, Carter, Hoy & Eirinberg, P.C., Sioux Falls, S.D., for John W. and Vinnese Carter.

John Harmelink, Harmelink & Fox Law Offices, Yankton, S.D., for Dale Leon Martin.

PEDER K. ECKER, Bankruptcy Judge.

These cases are before the Court on applications for court approval of professional compensation from estate funds. The cases are presented on the United States Trustee's office's objections and the Court's duty to scrutinize fee applications independent of objections.

The United States Trustee's objections are addressed to hourly rates for travel time and inadequately itemized fee applications. The United States Trustee requests the Court to set standards as to the rate professionals may bill for their travel time.

### Travel Time

Virtually all the travel time is billed at the applicants' full hourly rate. The United States Trustee's office contends that travel time should be billed at a reduced rate, unless the applicant demonstrates that legal work was performed during the travel time.

The Bankruptcy Code provision dealing with compensation of attorneys is 11 U.S.C. § 330(a)(1). Section 330(a)(1) provides that the bankruptcy court may award reasonable compensation for actual, necessary services rendered by an attorney based on the nature, the extent, and the value of such services, the time spent on such services, and the cost of comparable services other than in a case under this title. *See In re Powerine Oil Co.*, 71 B.R. 767, 770 (9th Cir.1986).

■ The Eighth Circuit in *Mann v. McCombs (In re McCombs)*, 751 F.2d 286, 288 (1984), stated the following:

Section 330 is meant to encourage high standards of professional legal practice in the bankruptcy courts. Bankruptcy courts are no longer bound by pre-code notions of frugality and economy in fixing fees. Bankruptcy courts must consider whether the fee awards are commensurate with fees for professional services in nonbankruptcy cases, thus providing sufficient economic incentive to practice in the bankruptcy courts.

See *In re Atlas Automation, Inc.*, 27 B.R. 820, 822 (E.D.Mich.1983); *see also In re Hanson*, No. 386–00136, Ch. 12, at 2 (Bankr.D.S.D. Mar. 8, 1989). The award of fees is within the discretion of the bankruptcy court. *McCombs*, 751 F.2d at 287.

The factors utilized for consideration of attorney awards are found in *Johnson v. Georgia Highway Express*, 488 F.2d 714 (5th Cir.1974), and made applicable in the bankruptcy context by *In re First Colonial Corp. of America*, 544 F.2d 1291 (5th Cir.1977), *cert. denied*, 431 U.S. 904, 97 S.Ct. 1696, 52 L.Ed.2d 388 (1977). The twelve factors considered in *Johnson* are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal services properly; (4) the preclusion of other employment by the attorney due to the acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the clients or other circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson*, 488 F.2d at 717–19. The *Johnson* factors were approved by the Court of Appeals for the Eighth Circuit in *Cleverly v. Western Electric Co.*, 594 F.2d 638, 642 (8th Cir. 1979), and by this district for bankruptcy cases in *In re Doyle–Lunstra Sales Corp.*, 19 B.R. 1003 (D.S.D.1982). Also, while preserving the bankruptcy estate is no longer the primary concern in awarding professional fees, this Court has held that economy should be retained as a relevant factor. *Hanson*, No. 386–00136 at 2; *see In re Henning*, 55 B.R. 682 (Bakr.D.S.D.1985) (*Henning II*). I determined that a balance must be struck between preserving the estate for creditors and "the need to be generous enough to encourage lawyers and others to render the necessary and exacting services that bankruptcy cases often require." *Henning II*, 55 B.R. at 684, *citing In re Yale Express System, Inc.*, 366 F.Supp. 1376, 1381 (S.D.N.Y.1973); *see Hanson*, No. 386–00136 at 2.

The burden of persuasion remains at all times with the applicant to show the reasonableness of the compensation or reimbursement sought. *In re Tri–County Water Ass'n, Inc.*, 91 B.R. 547, 548 (Bankr. D.S.D.1988). The burden of production shifts to the objector only after the applicant has presented a prima facie case. *In re Ralph Marcantoni & Sons, Inc.*, 62 B.R. 245, 247 (Bankr.D.Md.1986).

The court has the independent authority and responsibility to determine the reasonableness of all requests for payments of attorneys' fees. *See In re Pettibone Corp.*, 74 B.R. 293, 299–300 (Bankr.N. D.Ill.1987). This responsibility exists whether or not any objections or requests for hearing have been filed with regard to a particular fee application. *Id.* The court may rely upon its own knowledge of customary rates and its own experience in determining the reasonableness and necessity of fees without the need for independent evidence. *In re Golf Consol Services, Inc.*, 91 B.R. 414, 415 (Bankr.S.D.Tex.1988).

As the United States Trustee's brief points out, the published cases vary widely in the compensation allowed for reasonable and necessary travel time. These various courts have varied from no compensation, *Jungkurth v. Eastern Financial Services, Inc.*, 87 B.R. 333, 337 (E.D.Pa.1988); *In re Seneca Oil Co.*, 65 B.R. 902, 909 (Bankr.W. D.Okla.1986), to one-half the attorney's hourly rate, *In re S.T.N. Enterprises, Inc.*, 70 B.R. 823, 837 (Bankr.D.Vt.1987); *In re Pothoven*, 84 B.R. 579, 585 (Bankr.S.D. Iowa 1988); *In re Taylor*, 66 B.R. 390, 397 (Bankr.W.D.Pa.1986), to 75% of the attorney's hourly rate, *In re C & J Oil Co., Inc.*, 81 B.R. 398, 404 (Bankr.W.D.Va.1987), to the attorney's full hourly rate, *In re Frontier Airlines, Inc.*, 74 B.R. 973, 977 (Bankr. D.Colo.1987). At least two courts have recognized the flat hourly rate for travel. *In re Sinor*, 87 B.R. 620, 624 (Bankr.E.D. Cal.1988) ($50.00 per hour for travel); *In re Amatex Corp.*, 70 B.R. 624, 627 (Bankr.E. D.Pa.1985) ($40.00 per hour for travel). The court in *Frontier Airlines*, however,

stated the following in regard to compensation for travel time:

> As to travel time, the question is not whether the time spent traveling was nonproductive, but rather whether the travel time was reasonable and necessary. If the trip was necessary, then the time spent in making the trip was part of the total time necessary for the performance of the professional services which were rendered.

*Frontier Airlines,* 74 B.R. at 979.

Judge Hoyt, in *Hanson,* stated the following with regard to compensation for travel time:

> In the District of South Dakota, the geographic locations of the court points does [sic] not always coincide with the attorney's residence, and the concession must be made that substantial travel time is often necessary. Also, because a limited number of attorneys in our district practice bankruptcy law, the debtor's ability to hire qualified counsel would be unduly chilled if travel was not fully compensable.

*Hanson,* No. 386–00136 at 3. This Court is in agreement with Judge Hoyt's reasoning in *Hanson* and, therefore, will find that the applicants should be compensated for their travel time at their full hourly rate if, indeed, their travel time was reasonable and necessary. This Court will also find that the applicants' travel time was both reasonable and necessary.

This result is proper because frugality is no longer the main objective and full compensation is generally available for travel in cases "other than in a case under" title 11. *Hanson,* No. 386–00136 at 3; *see* 11 U.S.C. § 330(a); *see also McCombs,* 751 F.2d at 288. On the other hand, trimming fees in cases where they become too large a percentage of the total fees applied for will help maintain the balance this Court spoke of in *Henning II. Henning II,* 55 B.R. at 684; *see Hanson,* No. 386–00136 at 4.

This holding requires that professionals seeking compensation from the estate prorate travel time and expenses between bankruptcy cases on which they are working. *See Hanson,* No. 386–00136 at 4. Out-of-town counsel appearances must be scheduled for the same date on as many of their files as practical. *Id.* Also, when traveling, attorneys are encouraged to work on their bankruptcy cases when practical. *Id.* Legal services need not be rendered on the file on which the attorney is traveling. *Id.* Work performed on one file when traveling on another file may be prorated between the cases. *Id.*

It must be borne in mind that travel is not always necessary within the meaning of Section 330. *Id.* Of course, travel can be unnecessary for many reasons. *Id.* This Court spoke of one such type of junket when it held that an attorney located far from the "situs of the bankruptcy" could not expect compensation for travel when "adequate local representation" is available. *In re Henning,* 52 B.R. 350, 352 (Bankr.D.S.D.1985), *quoting In re Interstate United Electronics Sales Co.,* 44 B.R. 784 (Bankr.S.D.Fla.1984); *see Hanson,* No. 386–00136 at 4. The Hennings hired Chicago counsel. *Hanson,* No. 386–00136 at 4.

Attorneys should make every attempt to keep travel expenses at a minimum. *Id.* Such things as encouraging client meetings in their office rather than traveling to an outsite, having documents delivered by paraprofessionals or office staff when personal delivery is necessary, and more use of teleconferencing are just a few examples that come to mind. *Id.* Also, attorneys should not expect full compensation for a task that requires little or no legal expertise. *See Doyle–Lunstra,* 19 B.R. at 1007; *see also Hanson,* No. 386–00136 at 2, n. 3.

The point at which the attorney's travel time fees become too large a portion of the total fees applied for must be determined on a case-by-case basis. *Hanson,* No. 386–00136 at 4; *see In re Hogg,* 103 B.R. 207 (Bankr.D.S.D.1988) (where 50.6 hours of travel time amounted to over one-fifth of the entire amount of fees applied for, fees attributed to travel time were cut by one-half); *In re Larry Eugene Hanson,* No. 485–00388

(Bankr.D.S.D. July 28, 1986) (fees reduced for travel time amounted to approximately one-fourth of the entire application). In this case, the applicants' travel time fees were not too large a portion of the total fees applied for and, therefore, the fees for travel time requested by the applicants are approved.

### Sufficiency of the Fee Application

Bankruptcy Rule 2016 provides in pertinent part:

"An entity seeking interim or final compensation for services, or reimbursement of necessary expenses, from the estate shall file with the court an application setting forth a detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested."

Many courts have grappled with the question of what constitutes a sufficiently "detailed fee statement" as required by Bankruptcy Rule 2016. Some courts have set forth very precise requirements. In *In re S.T.N. Enterprises, Inc.*, 70 B.R. 823 (Bankr.D.Vt.1987), the court required meticulous, contemporaneous records for all compensation and reimbursement sought. The court stated each application must include a specific analysis of each task with time separately allotted to each task. *Id.* at 832. Counsel was advised to submit a self-contained fee application wherein the relationship of each task to the case was explained and the time expended and the amount charged were clearly set forth. *Id.* at 832–45.

Similar requirements were imposed by the court in *In re Pothoven*, 84 B.R. 579 (Bankr.S.D.Iowa 1988). The court in *Pothoven* stated the following:

At a minimum, every application for attorney fees must include a specific analysis of each task for which compensation is sought. The application should list and describe the activity, the date it was performed, the attorney or professional who performed the work, the time spent on the work and the individual's hourly rate.

*Id.* at 584.

Other courts, though in less lengthy discourses, have adopted the same fundamental requirements. "Counsel must make a reasonable effort to submit meaningful billing records from which ... this court, as well as other interested parties, can make an informed evaluation of the nature, reasonableness and value of the services which have been provided." *In re Frontier Airlines, Inc.*, 74 B.R. 973, 977 (Bankr. D.Colo.1987). The nature and substance of each item of service should be set forth. *Doyle–Lunstra*, 19 B.R. at 1006.

The United States Trustee's objections contend that Mr. Carter has not sufficiently documented all entries such that the Court can determine pursuant to 11 U.S.C. § 330(a)(1) whether reasonable compensation is sought for only actual, necessary services. Specifically, services on October 8 and 15 and December 14 of 1987, and February 10, 11, 22, and 23, March 1, 2, 3, 9, 15, 18, and 29, April 22 and 26, May 2 and 12, June 10, August 1, and September 1 of 1988 are not clearly identified nor is their relationship to this bankruptcy proceeding set forth.

The United States Trustee has asked the Court to enter an order requiring applicant to amend his application in recognition of the above objections and that applicant be awarded reasonable compensation for only those services he has shown to be actual, necessary services.

After reviewing Mr. Carter's fee application, the United States Trustee's objections to Mr. Carter's fee application, and Mr. Carter's response to the United States Trustee's objections, this Court will find that Mr. Carter has adequately explained and identified the insufficiently documented services, objected to by the United States Trustee, and their relationship to this bankruptcy proceeding. Therefore, the fee application of David Carter is approved. In regard to future fee applications submitted to this Court, we suggest to Mr. Carter that he should be more specific and use more detail when document-

ing the entries in his billing statements. We think this would alleviate the problem he has run into with this fee application.

### Paraprofessional Billing

■■■■ If paralegal work is to be compensable, the qualifications of the assistant should be established to justify the charge. *Hanson,* No. 386–00136 at 5. While legal secretaries acquire vast knowledge of the subject matter and are certainly an integral part of any law office, their service is considered one of the many items that make up the cost of office overhead which in turn is reflected in the hourly rate charged by the attorney. *Id.* Simply classifying a secretary as a paralegal for billing purposes does not justify compensating secretary time. *Id.*

The United States Trustee's objections contend that Mr. Harmelink has failed to sufficiently identify two persons, "PCL" and "TS," for whom professional compensation for their services is sought. They argue that the Court and parties in interest are unable to determine whether "PCL" and "TS" are attorneys, paralegals, or other professionals who may receive reasonable compensation for professional services under 11 U.S.C. § 330(a)(1). Also, the United States Trustee's office contends that Mr. Harmelink has failed to sufficiently itemize some time spent in travel since it was lumped with other legal services rendered on the same day.

■■■■ Again, there seems to be a problem of insufficient detail with an applicant's billing records. Here the problem is the insufficient identification of the paralegal performing legal services for Mr. Harmelink. After reviewing Mr. Harmelink's fee application, the United States Trustee's objections to Mr. Harmelink's fee application, Mr. Harmelink's response to the Unit-

ed States Trustee's objections, and a letter submitted to the United States Trustee's office, identifying the persons performing the paralegal work for Mr. Harmelink, the Court will find that Mr. Harmelink has adequately identified the persons performing the paralegal services for him. Also, the services performed by the persons identified as "TS" and "PCL" are of paralegal nature; this satisfies the requirement as to the assistant being qualified as a paralegal. This Court finds that the rest of Mr. Harmelink's application for fees is sufficiently detailed. Therefore, Mr. Harmelink's fee application is approved.

With the opening of the United States Trustee's office in Sioux Falls, the machinery is now in place to scrutinize compensation applications. *Hanson,* No. 386–00136 at 7. No longer is court approval of fees and expenses requested such a foregone conclusion. *Id.* When constructing an application, the professionals must bear in mind that it is his or her burden to show that court approval is warranted. *In re Tri–County Water Ass'n, Inc.,* 91 B.R. 547 (Bankr.D.S.D.1988). Insufficiently documented expense and fee entries will be disallowed. *See Henning II,* 55 B.R. at 685; *see Hanson,* No. 386–00136 at 7. In other words, those professionals seeking court approval of fee and expense applications have a strong incentive to establish the propriety of their applications by adequate itemization. *Hanson,* No. 386–00136 at 7.

This decision constitutes the Court's Findings of Fact and Conclusions of Law in the above-entitled matter pursuant to Bankr.R.P. 7052 and 9014 and Fed.R.Civ.P. 52. The fee applicants in this case, Mr. Carter and Mr. Harmelink, are directed to submit proposed orders consistent with the Court's Findings of Fact and Conclusions

of Law and in accordance with Bankr.R.P. 9021, to the Clerk of this Court.